735 P.2d 1026

**Thomas B. CAMPION and Lynn H. Campion, husband and wife, Plaintiffs-Appellants,**

v.

**Owen SIMPSON, Defendant-Respondent.**

**No. 16418.**

Supreme Court of Idaho.

April 8, 1987.

Robert M. Tyler, Jr., Boise, for plaintiffs-appellants.

Lloyd J. Walker, Twin Falls, for defendant-respondent.

HUNTLEY, Justice.

This appeal raises the issue of whether the trial court's damage award to plaintiffs Thomas and Lynn Campion is supported by competent evidence. We find the award to be supported by substantial, competent evidence and, therefore, affirm.

In 1973, the Campions bought property fronting the Big Wood River for $120,000. The property had a unique amount of privacy afforded it due to a wooded island in the river. Prior to June 1974, the Campions spent $30,000 remodeling and landscaping the property. In June 1974, Owen Simpson diked a portion of the river to protect his own property, which alteration, when coupled with the large spring runoff then occurring, resulted in the partial flooding of the Campions' property, the erosion of twenty to twenty-five feet of the Campions' beach and destruction of several mature trees. The course of the channel was also altered, creating an increased risk of future flooding to the Campion property.

This case is before this Court on appeal for the second time. In *Campion v. Simpson*, 104 Idaho 413, 659 P.2d 766 (1983), we ruled that the Campions had a valid cause of action against Simpson for the damage to their property caused by Simpson's obstruction of the channel. We then remanded to the trial court the issue of damages and possible future injunctive relief, and instructed the court to enter judgment for the Campions for $11,285 in past and future riprapping expenses to stabilize the riverbank and prevent future erosion, and to hear evidence as to the value of the property before and after the flood (i.e. diminution in value).

After our remand, the district court rendered partial summary judgment for the Campions in the amount of $14,993.01. This award consisted of $11,285 for riprapping expenses and $2,743.26 for expert witness fees. The court found that there remained no additional risk of future flooding to the property and that the property was, in essence, only devalued by loss of privacy due to the loss of the island in the channel, which island the Campions did not own.

The trial court scheduled the case for further evidence regarding reduction in property value *exclusive of* any consideration of the destruction of the island, after which the trial court denied the Campions any compensatory damages beyond the riprapping expenses and expert witness fees granted upon partial summary judgment. Final judgment was entered awarding the Campions the partial summary judgment amount of $14,993.01 plus interest thereon from December 6, 1983, and attorney fees and costs in the amount of $39,400.14.

The Campions appeal the trial court's failure to award further damages, contending that the trial court award, as it only provided for riprapping and expert witness expenses, contained no award for diminution in value of the property, which, the Campions argue, was mandated by our prior opinion in *Campion v. Simpson, supra*, and which result they assert was contrary to the evidence presented at trial. The Campions also seek $86,346.70 prejudgment interest, which sum they based upon evidence presented to the court of an $80,000 decrease in property value, computed in accordance with I.C. § 28–22–104.

We address the propriety of the trial court's damage award, and our ruling thereon renders the prejudgment interest issue moot. In our prior opinion, *Campion v. Simpson, supra*, we instructed the trial court to conduct further proceedings on the damage issue:

> [T]here is no competent evidence in the record as to the before and after value of the property in 1974, and no award can properly be made for the alleged ... diminution in value. Further, no award should be entered for the ... "additional risk" factor unless the court finds the risk remains after channel I is reopened or that the risk remains because channel I cannot be reopened.
>
> Accordingly, we remand to the trial court for further proceedings on the damages and injunctive relief issue in accordance with this decision. 104 Idaho at 418.

In accordance with our decision, the trial court conducted further proceedings and heard testimony from real estate brokers John Burke, Richard Kellett and Thomas

Monge, as well as from Mike Simpson, a real estate salesman. It is important to note that the trial court expressly acknowledged, in its decision, that it was required to, and would, address the issue of diminution in property value. "This court must determine damage (decrease in value) of the Campion property and am [sic] relying heavily on the testimony of Mr. John A. Burke."

Campions' expert Burke testified that the two factors suggesting diminution of value to the property were the loss of privacy due to the destruction of the island in the channel and the trees near the Campion home, and the undermining of the river-bank adjacent to the Campion home. This view was corroborated by the other expert witnesses. Further, the testimony of Thomas Monge indicated that there was essentially no diminution in value to the property, apart from the loss of privacy due to the loss of the island in the channel, which the Campions did not own. The record also contained testimony from Mike Simpson indicating that riprapping has fully stabilized and secured the Campions' river-bank.[1]

Our standard of review on appeal is clear. Where findings of fact are supported by substantial competent, though conflicting, evidence, they will not be set aside on appeal. I.R.C.P. Rule 52(a); *State v. Tierney*, 109 Idaho 474, 708 P.2d 879 (1985). Although the trial court, in its memorandum decision, did not explicitly state that it found no diminution in property value, such was, in essence, its holding.

As noted, the court specifically stated that it "must determine" the decrease in value of the property. The court found the total loss as being $11,285, or the cost of riprapping. In short, the trial court appropriately addressed the issue of diminution in value and based its findings upon substantial, competent evidence.

There does exist in the record contrary evidence upon which a finding of diminution in value of up to $80,000 could have been made. John Burke testified to an $80,000 diminution in value, but did so by applying his 40% diminution in value percentage to Richard Kellett's appraisal of the property's fair market value. Therefore, while Burke's testimony of $80,000 diminution in value was certainly admissible, its persuasive weight was justifiably diminished, as Burke did not personally provide before and after value figures.[2] The trial court did not, then, abuse its discretion in discounting the importance of Burke's testimony in this regard.

The judgment of the trial court is affirmed.

Costs to respondent. No attorney fees awarded.

DONALDSON, BAKES and BISTLINE, JJ., and WALTERS, J. Pro Tem., concur.

1. QUESTION: Mr. Simpson, are those riverbanks capable of being undermined by the water?
ANSWER: Yes.
QUESTION: And is there a common way of protecting against that?
ANSWER: Yes, with riprapping is the most common way of doing it any more.
QUESTION: And is that—has that been done in this area of the river?
ANSWER: Yes, it's been done both upstream and downstream.
QUESTION: And at the Campion property?
ANSWER: Yes.
QUESTION: And across the river?
ANSWER: Yes. The Campion, it's been riprapped from the Painter dike on the—what would be the east side of the river downstream on pretty much both sides of the river.

QUESTION: In your opinion has this stabilized any of the, or has it stabilized the real estate values of the land adjacent to the riprapping.
ANSWER: Yes. With the banks being stabilized and protected people are much, they feel more protected by it rather than having to take some sort of protective action after there's a problem, and that whole section of the river is pretty much riprapped now upstream.
QUESTION: And when the riprapping is completed that stabilizes the value?
ANSWER: Yes.

2. No evidence was presented attributing a specific diminution in value due to the loss of the several trees, yard, and beach near the house alone, i.e., exclusive of the loss of the wooded island.