# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38405

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

ROBERT LYLE BARTON, JR.,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2013 Term

2013 Opinion No. 32

Filed: March 8, 2013

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. G. Richard Bevan, District Judge

District court decision on entrapment defense, underline affirmed.

Sara B. Thomas, State Appellate Public Defender, Boise, for appellant.  Erik Lehtinen, Chief Deputy State Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.  Kenneth K. Jorgensen, Deputy Attorney General argued.

---

BURDICK, Chief Justice

    This case comes before this Court on appeal from Robert Lyle Barton, Jr. (Barton), who was found guilty of solicitation of perjury by a Twin Falls County jury.  Barton, the victim of aggravated battery, was charged with solicitation and conspiracy to commit perjury in connection to his testimony in the battery case.  On appeal, Barton argues that the jury should have been instructed on his defense of entrapment, and that such a defense is consistent with his plea of innocence.  The State disagrees, arguing that no reasonable view of the evidence would support an instruction for entrapment and that such a defense is incompatible with his plea of innocence.  We affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    On August, 18, 2009, Robert Barton was charged with one count of solicitation of perjury under I.C. § 18-2004, and one count of conspiracy to commit perjury, a felony under I.C. §§ 18-

1

5409, 18-1701. Barton was previously the victim of an alleged aggravated battery by three men, including Chris Taylor (Taylor). According to the Information, Barton solicited $15,000 from Taylor's defense attorney, M. Lynn Dunlap (Dunlap), in exchange for changing his testimony.

Although Dunlap and Barton present different versions of events some facts are agreed upon. Dunlap contacted the Attorney General's office for advice after he became aware of the potential pay-for-perjury. Dunlap was put in contact with the Twin Falls Police Department, who placed a video recording device in Dunlap's office and provided another device to record phone conversations. On August 11, 2009, at the direction of the police, Dunlap placed a call to Barton to discuss the matter further. This lead to an in-person meeting where the two discussed the terms of Barton's potential perjury, which was predicated on bringing another witness, Kimberly Souza[1] (Souza) into the arrangement. The following day, Barton returned to Dunlap's office with Souza. After a conversation regarding the payment amount in exchange for perjury, Dunlap gave Barton $200 in bills provided by the police as "earnest money." At a third and final meeting, Dunlap gave Barton an additional $1,000 in marked bills. Barton was arrested by police as he exited Dunlap's office.

On August 31, 2009, Barton entered a plea of not guilty to both charges and a three day jury trial began on August 25, 2010. At several points in the proceeding Barton's counsel attempted to raise the defense of entrapment and also requested a related jury instruction. The district judge denied the requested instruction, finding that there was insufficient evidence in the record to support such an instruction. Additionally, Barton testified that he had no intention of soliciting or committing perjury and intended to tell the police about his arrangement with Dunlap. Barton also produced witnesses to corroborate his story.

At the conclusion of evidence, the jury found Barton guilty of solicitation of perjury and not guilty of conspiracy to commit perjury. On November 1, 2010, Barton was sentenced to a prison term of 60 months including 6 months fixed, and a fine of $2,500. A Judgment of Conviction was entered by the district court on the same day. Barton timely filed a notice of appeal with this Court on December 10, 2010.

## II. STANDARD OF REVIEW

Whether jury instructions fairly and adequately present the issues and state the applicable law is a question of law over which this Court exercises free

---

[1] Kimberly Souza is often referred to as "Kimberly Souza-Pena" or "Kimberly Pena-Souza" in the record. We use the version used by Ms. Souza during her testimony at trial.

review. Therefore, the correctness of a jury instruction depends on whether there is evidence at trial to support the instruction. We look at the jury instructions as a whole, not individually, to determine whether the jury was properly and adequately instructed.

*State v. Shackelford*, 150 Idaho 355, 373–74, 247 P.3d 582, 600–01 (2010) (internal citations and quotations omitted).

## III. ANALYSIS

In the sole issue on appeal, Barton argues that the district court erred when it refused to instruct the jury on the defense of entrapment. Barton's argument is two-pronged. First, he argues that a reasonable view of the evidence supports a theory of entrapment as a defense and therefore the trial court must instruct on the issue. Second, Barton argues that his assertion of innocence should not be a barrier to the presentation of an entrapment defense. In response, the State argues that no reasonable view of the evidence supports giving a jury instruction on the affirmative defense of entrapment, and that due to Barton's assertions of innocence he was properly precluded from claiming a defense of entrapment. We hold that the district court did not err in refusing Barton's requested jury instruction on the entrapment defense.

A defendant who enters a plea of not guilty may generally raise affirmative defenses. To hold otherwise would eliminate the ability for defendants to utilize such defenses. Idaho Criminal Rule 11(a)(1) states that "[a] defendant may plead guilty or not guilty." And as this Court has stated, "it is well established that a valid plea of guilty, voluntarily and understandingly given, waives all non-jurisdictional defects and defenses, whether constitutional or statutory, in prior proceedings." *State v. Clements*, 148 Idaho 82, 86, 218 P.3d 1143, 1147 (2009). The question in this case, then, is whether the specific affirmative defense of entrapment is inconsistent with Barton's claim of innocence.

This Court has previously defined the elements of the entrapment defense. "Entrapment occurs when 'an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a State agent who, desiring grounds for prosecution, originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense.'" *State v. Koller*, 122 Idaho 409, 411, 835 P.2d 644, 646 (1992) (quoting *State v. Hansen,* 105 Idaho 816, 817 n.1, 673 P.2d 416, 417 n.1 (1983)). In this case, the applicability of the entrapment defense is a threshold question for whether the jury should have been instructed on the defense of entrapment. The State argues that because Barton did not admit the offense, and

that admission is a prerequisite to the assertion of an affirmative defense, he is precluded from bringing the affirmative defense of entrapment. Under precedential case law the State is correct.

In *Suits v. Idaho Board of Professional Discipline*, a medical doctor sought judicial review of discipline imposed by the Board of Medicine. 138 Idaho 397, 400, 64 P.3d 323, 326 (2003). Suits was charged with multiple ethical violations, including the writing of illicit drug prescriptions. *Id.* at 399, 64 P.3d at 325. Under a cooperation agreement with the Cassia County Sheriff's office, a patient of Suits recorded numerous transactions with the doctor. *Id.* At trial, Suits attempted to raise the defense of entrapment. *Id.* at 400, 64 P.3d at 326. This Court held that the entrapment defense did not apply:

> Dr. Suits attempts to raise the entrapment defense as a shield in his disciplinary proceeding. We need not reach this issue, however, because Dr. Suits has never admitted that he committed any of the underlying offenses. His defense that the criminal offense did not happen is inconsistent with his claim on appeal that he was entrapped into committing the crime. Therefore, he is not in a position to assert the entrapment defense.

*Id.* This Court also noted that Suits was able to present evidence at the criminal jury trial in support of his entrapment claim, but that the jury rejected the defense and the hearing officer in the Board of Medicine proceeding found no evidence to support same. *Id.*, 138 Idaho at 400 n.2, 64 P.3d at 326 n.2.

In response, Barton cites to *State v. Garde*, and argues that this Court implicitly recognized that the entrapment defense may be utilized where the defendant asserts his innocence. 69 Idaho 209, 205 P.2d 504 (1949). In *Garde*, the defendant was charged with, and found guilty of, the unlawful sale of alcohol. *Id.* at 211, 205 P.2d at 504–05. At trial, Garde requested a jury instruction on the defense of entrapment, but the district court refused the request. *Id.* This Court found that under the facts in the case, "[t]here was no entrapment and the requested instructions were properly refused." *Id.* However, this Court did not expressly comment on whether a jury instruction on the defense of entrapment would be consistent with Garde's innocence defense. In addition, *Suits* was issued over 50 years after *Garde* and provided clarity on the presentation of inconsistent defenses.

The precedent in Idaho is clear. Contrary to Barton's argument, his claim that he had no intent to solicit or commit perjury, just an intent to expose Dunlap, in incompatible with the defense of entrapment. Barton notes that the subjective analysis for entrapment focuses on intent and that an entrapped individual would not have the requisite criminal intent to commit the

4

crime. However, there is a subtle yet real distinction between a defendant testifying that he had no intent, and a defendant testifying that he had no intent because the state induced his criminal actions. In the case of state inducement, there is an express acknowledgment that the defendant committed the criminal acts but did so only as a result of state action that induced the criminal behavior. In order to be entrapped, one must have the intent to commit the offense, but that intent must arise from state action inducing a person not otherwise predisposed to commit the offense to do so. As an affirmative defense, the entrapment defense in not available to a defendant that has never admitted to committing any of the underlying offenses. *Suits*, 138 Idaho at 400, 64 P.3d at 326. Affirmative defenses are generally categorized as excuse or justification for the crime, so that even if every element of the crime is proven, the accused may avoid conviction. On this point the present case is analogous to *Suits*, and as we stated in *Suits*, Barton's defense that he was entrapped into committing the crime is inconsistent with his claim that the criminal offense did not happen. Therefore, we hold that the entrapment defense is unavailable to Barton and the request for a jury instruction on the defense of entrapment was properly denied by the district court.

## IV. CONCLUSION

We hold that the district court did not err when it refused to instruct the jury on the affirmative defense of entrapment.

Justices J. JONES, and W. JONES, **CONCUR.**

Justice EISMANN, concurring in the result.

"It is uniformly held that the power to define crime and fix punishment therefor rests with the legislature, and that the legislature has great latitude in the exercise of that power." *Malloroy v. State*, 91 Idaho 914, 915, 435 P.2d 254, 255 (1967). As our Constitution states, "The legislative power of the state shall be vested in a senate and house of representatives." Idaho Const. art. III, § 1. Likewise, the Constitution expressly provides that the judiciary shall not exercise power properly belonging to the legislature. *Id.*, art. II, § 1. Inherent in the power to define crime is the power to define defenses to that crime. *State v. Stiffler*, 117 Idaho 405, 410, 788 P.2d 220, 225 (1990) (in statutory rape prosecution, mistake as to age is not a defense because the legislature did not so provide); *State v. Searcy*, 118 Idaho 632, 635-37, 798 P.2d 914, 917-19 (1990) (the legislature, which created the insanity defense, has the power to eliminate it).

The legislature has specified the persons who are not capable of committing crimes in Idaho Code section 18-201, which is as follows:

> Persons capable of committing crimes. All persons are capable of committing crimes, except those belonging to the following classes:
> 1. Persons who committed the act or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent.
> 2. Persons who committed the act charged without being conscious thereof.
> 3. Persons who committed the act or made the omission charged, through misfortune or by accident, when it appears that there was not evil design, intention or culpable negligence.
> 4. Persons (unless the crime be punishable with death) who committed the act or made the omission charged, under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused.

Persons who have been entrapped into committing a crime have not been excluded by the legislature from being those capable of committing crimes, nor has the legislature adopted a specific statute creating the defense of entrapment. It likewise has not declared crimes committed by those entrapped to be justifiable, as it has with respect to homicides committed under defined circumstances. I.C. § 18-4009. By what power can this Court create the defense of entrapment? Even if we had the power to create the defense, I would not do so because it is based upon a fallacy regarding human nature.

The entrapment defense only applies to someone who intentionally commits a crime. As such, the defense is based upon a false understanding of human nature. In *State v. Koller*, 122 Idaho 409, 835 P.2d 644 (1992), this Court defined the defense of entrapment as follows, "Entrapment occurs when 'an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a State agent who, desiring grounds for prosecution, *originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense*.' " *Id*. at 411, 835 P.2d at 646.

The person who seeks to raise the entrapment defense was not forced to commit the crime, but did so because he or she chose to do so. Nobody commits a crime requiring a specific intent without forming the intent required to commit that crime. Nobody can "implant" the intent to commit a crime in the mind of another. Others may suggest or encourage the commission of the crime, but to commit the crime the defendant must voluntarily form the intent to do so and then act on that intent.

6

The defense applies to someone "not inclined to commit a criminal offense." If the defendant was not already inclined to commit a criminal offense, he or she would not have committed the crime charged. The defendant's actions reveal his or her inclinations. The commission of the crime establishes what the defendant was inclined to do when given the opportunity. The entrapment defense simply attempts to blame others for what the defendant willingly did. A defendant who seeks to raise the entrapment defense is no more innocent than is the defendant who seeks to shift the blame for committing a crime to his or her peers or to the circumstances that provided the opportunity to commit the crime.

A defendant can always contend that he or she did not have the intent to commit the crime charged. That is an issue for the jury to decide. In this case, Barton contended that he was simply attempting to "burn" Dunlap, whom he believed to be a corrupt defense lawyer, and that he never intended to commit perjury. He, in essence, presented evidence that he was not "inclined" to commit the crime, and the jury obviously did not believe him. Any mitigating circumstances regarding the defendant's decision to commit the crime are more appropriately considered by the court at sentencing.

For the above reasons, I would affirm the judgment and overrule our prior decisions adopting the entrapment defense.

Justice HORTON, concurring.

Although the views expressed in Justice Eismann's concurring opinion warrant serious consideration, I am unable to join him at this time because we do not have the benefit of briefing from the parties to this appeal and abrogation of the entrapment defense is not necessary to the resolution of this appeal.

This Court first recognized the entrapment defense almost a century ago in *State v. Mantis*, 32 Idaho 724, 187 P. 268 (1920). Recognition of the defense is nearly universal in this country. *State v. Mata*, 106 Idaho 184, 186, 677 P.2d 497, 499 (Ct. App. 1984). Although it is generally recognized that the defense is not predicated upon constitutional rights, *id*., this Court has suggested otherwise. In *State v. Valdez-Molina*, a unanimous decision of this Court declared: "In the entrapment context, however, direct targets of the government's activity should have standing to contest their convictions on the grounds that the government's conduct toward third parties was so outrageous that it violated their due process rights because they are direct targets of the government's conduct." 127 Idaho 102, 104-05, 897 P.2d 993, 995-96

(1995). The Court further stated that the "objective theory of entrapment predicated on due process presents questions of law for the court, and is ordinarily not an issue for the jury." *Id*. at 104, 897 P.2d at 995. I find *Valdez-Molina* to be noteworthy for the complete absence of citation to authority for these pronouncements.

I am inclined to the views that *Valdez-Molina* does not represent an accurate statement of the law and that judicial action that contravenes the legislative power to define criminal conduct is inconsistent with our Constitution. That being said, we do not need to decide whether to continue to recognize the entrapment defense in order to decide this appeal. Without input from the interested parties, I am unwilling to break ranks with every other jurisdiction in this nation and overrule long-standing precedent which this Court has indicated is, at least in part, grounded in constitutional protections.